IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHINO WALTERS and<br>TAMARA WALTERS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CHEESECAKE FACTORY<br>RESTAURANTS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 1:24-cv-02348<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT THE CHEESECAKE FACTORY RESTAURANTS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Defendant The Cheesecake Factory Restaurants, Inc. ("Defendant" or "TCF"), by counsel, hereby submits its Memorandum of Law in Support of its Partial Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiffs Chino Walters and Tamara Walters' intentional infliction of emotional distress claim in Count III of the Complaint fails to state a claim upon which relief can be granted.

For the reasons below, Count III of Plaintiffs' Complaint should be dismissed with prejudice.

**INTRODUCTION**

Plaintiffs Chino Walters and Tamara Walters ("Plaintiffs"), individually and as parents and next friends of their three (3) minor children, A.W., I.W., and C.W., bring this action against Defendant alleging that on November 21, 2021, A.W. suffered physical, mental, and emotional injuries when a container of hot water was spilled on her while Plaintiffs were dining at The Cheesecake Factory restaurant in Bethesda, Maryland (the "Restaurant"). The Complaint alleges

that the rest of the family has suffered emotional injuries as a result of viewing the Incident involving A.W. Plaintiffs' Complaint brings three (3) tort-based causes of action against Defendant resulting from the alleged Incident: (1) Premises Liability; (2) Negligence; and (3) Intentional Infliction of Emotional Distress ("IIED").

As explained below, IIED has been routinely held by Maryland courts to be rarely viable and Plaintiffs have failed to set forth sufficient factual predicate to meet the high bar of establishing each of the required elements of this claim with the necessary specificity. For all these reasons, Defendant respectfully requests that Plaintiffs' cause of action for IIED in Count III of the Complaint be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

The Complaint alleges that on November 21, 2021, Plaintiffs and their three (3) children went to the Restaurant for a celebratory dinner. *See* Complaint ["Compl."] at ¶ 7. Plaintiffs allege that they and their children were seated in a booth, with A.W. seated closest to the booth's opening. *Id*. at ¶ 8. Plaintiffs allegedly ordered cups of hot water from their waitress prior to ordering dinner. *Id.* at ¶ 9. The Complaint asserts that the waitress returned to Plaintiffs' table with the requested beverages but spilled a container of hot water on A.W. while doing so. *Id*. at ¶ 11. The Complaint alleges that A.W. was in immediate pain from the contact with the hot water, that she was crying and had visible injury to her skin, and that Plaintiffs and their other children were visibly upset regarding the Incident. *Id*. at ¶¶ 12-21, 25.

---

[1] Plaintiff's allegations in the Complaint are expressly denied. However, Defendant accepts these allegations as true solely for the purposes of this Partial Motion to Dismiss. *See Venkatraman v. REI Sys.*, 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.).

Plaintiffs allege that for approximately eleven (11) months after the incident, A.W. underwent treatment for both physical and emotional injuries resulting from the incident. *Id*. at ¶¶ 37, 39, 40-46, 48, 49, 52-54. A.W. is alleged to have received treatment for first and second-degree burns, post-traumatic stress disorder, fear of water, fear of returning to restaurants, heightened acoustic startle, anxiety, hypervigilance, body imaging, and chronic pain related to the incident. *Id*. at ¶ 55. A.W. is also alleged to have missed "several days of school and her grades declined" as a result of the incident. *Id*. at ¶ 56. Plaintiff Tamara Walters is also alleged to have received treatment for post-traumatic stress disorder, anxiety, and stress. *Id*. at 57.

## ARGUMENT

I. **LEGAL STANDARD**

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere labels and conclusions stating that the plaintiff is entitled to relief are not enough. *Id.* at 555. "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). "It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 557). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, to one

6

that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## II.     IIED IS GENERALLY DISFAVORED UNDER MARYLAND LAW.

As this Court is aware, "[g]enerally, claims for IIED are disfavored, difficult to establish and, as such, 'rarely viable' under Maryland law." *Johnson v. Balt. Police Dep't*, Civil No. ELH-19-0698, 2022 U.S. Dist. LEXIS 189576 at *175-76 (D. Md. Sept. 30, 2022) (collecting cases); *see also*, *Hunter v. Snee*, Civil Action No. ADC-21-402, 2022 U.S. Dist. LEXIS 13159 at *20 (D. Md. Jan. 24, 2022) ("IIED claims are 'rarely viable in a case brought under Maryland law.'") (citing and quoting *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007)). "Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be used sparingly, 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286 (D. Md. 2020) (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991)). Since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977), it has repeatedly advised that 'recovery' for IIED 'will be meted out sparingly[.]'" *Johnson*, 2022 U.S. Dist. LEXIS 189576 at *176 (quoting *Figueiredo-Torres*, 321 Md. at 654, 584 A.2d at 75). As the Honorable George J. Hazel explained in March 2021, "in the first 30 years after the Maryland 'Court of Appeals recognized the tort of IIED, it [] upheld such claims only four [4] times.'" *Nash v. Montgomery Cty.*, Case No. GJH-20-1138, 2021 U.S. Dist. LEXIS 63464, at *17 n.8 (D. Md. Mar. 31, 2021) (quoting *Lasater v. Guttmann*, 194 Md. App. 431, 449, 5 A.3d 79, 90 (2010)).

### III. PLAINTIFF HAS FAILED TO ESTABLISH THE ELEMENTS OF IIED.

In Maryland, the tort of intentional infliction of emotional distress has four (4) elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) [t]he emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). "[E]ach of these elements must be pled and proved with specificity." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000). "Generally, IIED claims succeed where there 'is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous and difficult to satisfy.'" *Hunter*, 2022 U.S. Dist. LEXIS 13159 at *20 (quoting *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670, 607 A.2d 8 (1992)).

    A. Intentional or Reckless Conduct

"IIED occurs when the actor 'desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow.'" *Haines v. Vogel*, 250 Md. App. 209, 229 (2021) (quoting *Harris*, 281 Md. at 567). Plaintiffs' Complaint does not allege that Defendant, or any of its employees, "desired" or acted intentionally to spill hot water on A.W. during the alleged incident. Count III of the Complaint does allege that the waitress' "conduct in [carrying] a hot kettle of water in a manner that was unsecured was reckless." *See* Compl. at ¶ 73. This is the only allegation upon which Plaintiffs rely to establish the first elements of this claim. However, Plaintiffs have not explained how the subject waitress' actions of carrying a container of hot water, which Plaintiffs

8

admit that they requested, was a reckless decision. Further, Plaintiffs have not explained, let alone established, that the waitress' decision to bring a container of hot water to their table would lead to a high probability that emotional distress would result *and* that the waitress, or any other Restaurant employee, deliberately disregarded such potential of emotional distress. Plaintiffs' conclusory attempt to establish the first element of this claim is fatally insufficient and, on its own, should be enough for Count III to be dismissed with prejudice.

    B. <u>Extreme and Outrageous Conduct</u>[2]

Further, Plaintiffs have not satisfied the second element of "extreme and outrageous conduct." This element necessitates conduct that "must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batson v. Shiflett*, 325 Md. 684, 734 (1992) (quoting *Harris*, 281 Md. at 567); *see also*, *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md. App. 772, 800 (1992) ("Extreme and outrageous conduct is behavior that goes 'beyond all possible bounds of decency,' or is behavior that is 'atrocious' or 'utterly intolerable in civilized community.'") (quoting *Harris*, 281 Md. at 567). "This high standard of culpability exists to screen out claims amounting to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' that simply must be endured as part of life." *Batson*, 325 Md. at 734 (quoting *Harris*, 281 Md. at 567). "Even demonstrating a defendant's intent to cause emotional distress is insufficient. 'If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless not liable unless his or her conduct is also extreme and outrageous.'" *McPherson*, 494 F. Supp. 3d at 286 (quoting *Weathersby*, 326 Md. at 670-71). "Another factor to consider is

---

[2] Defendant must reiterate here that, while this Court must accept Plaintiff's well-pleaded allegations as true at this stage, Defendant reserves the right to contest the veracity of such allegations at a later stage of this litigation.

whether the defendant knew that the plaintiff was particularly sensitive or susceptible to emotional distress." *Hrehorovich*, 93 Md. App. At 800.

There is nothing within the allegations of the Complaint that rises to the level of atrociousness and extremity that is required to meet the high standard of culpability for this cause of action. According to the Complaint, on November 21, 2021, Plaintiffs requested cups of hot water to drink. *See* Compl. at ¶¶ 7-9. The Complaint further states that the subject waitress indicated that she would bring back the requested hot water to Plaintiffs' table and that, upon the waitress doing so, the hot water was spilled on A.W. *Id*. at ¶¶ 10-11. There was, and is, nothing extreme or outrageous in the manner in which the container of water was brought to Plaintiffs' table and Plaintiffs have completely failed to explain how the purported actions of the subject waitress could be viewed in such a manner. As alleged by Plaintiffs' Complaint, this incident is, at most, an unfortunate accident and the failure to establish conduct by Defendant or its employees that shocks the conscious and should not be tolerated by civilized society should result in a dismissal of this cause of action.

C. Plaintiff Has Not Alleged A Severe Emotionally Disabling Response

A plaintiff, in bringing an IIED claim, is required to allege a "*severely* disabling emotional response" and "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*, 360 Md. at 370. "Previous cases indicate the high burden imposed by the requirement that a plaintiff's distress be severe." *Id.* at 369 (collecting cases). "Severe distress is that which 'no reasonable man could be expected to endure.'" *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (quoting *Harris*, 380 A.2d at 616). "This threshold is reached when a plaintiff's emotional distress is so severe as to have disrupted her ability to function on a daily basis." *Takacs*, 473 F. Supp. 2d at 652 (internal citations and quotations omitted).

10

Using this Court's reasoning utilized in *Hunter v. Snee*, Plaintiffs in this action have not "alleged the type of severe distress that would amount to an inability to function on a daily basis and thus have failed to show Defendant's liability for IIED." 2022 U.S. Dist. LEXIS 13159 at *21. Here, as in *Hunter* and *Takacs*, Plaintiffs have alleged that A.W. and Tamara Walters have sought treatment for mental health conditions purportedly related to the subject incident but neither is alleged to have "been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress." *Takacs*, 473 F. Supp. 2d at 652. "Indeed, '[t]o be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Johnson*, 2022 U.S. Dist. LEXIS 189576 at *175 (quoting *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997)). Such grave impact has not been alleged here and, as such, Plaintiffs' claims for IIED should be dismissed.

## CONCLUSION

As explained above, Count III should be dismissed because Plaintiffs have failed to meet the extremely high bar for specificity required to plead such a claim. For the reasons set forth above, Defendant The Cheesecake Factory Restaurants, Inc. respectfully requests that the Court enter an Order granting this Motion and dismiss Count III of Plaintiffs' Complaint with prejudice, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Justin M. Cuniff*
Justin M. Cuniff (Bar No. 16689)
Carlos A. Uria (Bar No. 19784)
KIERNAN TREBACH LLP
One Park Place, Suite 425
Annapolis, Maryland 21401
Tel: (443) 263-2800
Fax: (443) 263-2935
Email: jcuniff@kiernantrebach.com
Email: auria@kiernantrebach.com

***Counsel for Defendant The Cheesecake Factory Restaurants, Inc.***